**[This opinion has been published in *Ohio Official Reports* at 89 Ohio St.3d 238.]**

OFFICE OF DISCIPLINARY COUNSEL *v.* MADDEN.

**[Cite as *Disciplinary Counsel v. Madden*, 2000-Ohio-146.]**

*Attorneys at law—Misconduct—Permanent disbarment—Engaging in conduct*
*involving moral turpitude—Engaging in conduct involving dishonesty,*
*fraud, deceit, or misrepresentation—Engaging in conduct prejudicial to the*
*administration of justice—Engaging in conduct adversely reflecting on*
*fitness to practice law.*

(No. 99-2234—Submitted  March 8, 2000—Decided June 21, 2000.)

ON CERTIFIED REPORT by the Board of Commissioners on Grievances and

Discipline of the Supreme Court, No. 98-90.

————————————

{¶ 1} On March 29, 1999, relator, Office of Disciplinary Counsel, filed a three-count complaint charging respondent, James Patrick Madden, Jr., of  Orient, Ohio, Attorney Registration No. 0023597, with violating several Disciplinary Rules.  On April 15, 1999, respondent filed a response admitting "each and every allegation" in the complaint.  The matter was heard by a panel of the Board of Commissioners on Grievances and Discipline of the Supreme Court ("board").

{¶ 2} The panel found that in February 1996, after respondent, as administrator of the estate of Julia Ieremie, sold two parcels of real estate to Paul Mihalik, he deposited the $6,500 purchase price in his client trust account. Thereafter he used the funds to rent a cottage in Myrtle Beach, South Carolina, to cover a check written to other clients, and to write a check to himself.  In response to Mihalik's repeated demands that, pursuant to the sale contract, respondent pay delinquent taxes on the property, respondent wrote two checks for real estate taxes to the Lake County Treasurer in December 1996.  The checks were returned for insufficient funds, and Mihalik had to pay the taxes himself.  Although respondent

eventually reimbursed Mihalik, he was found guilty of passing bad checks and sentenced to ninety days' incarceration and two years of community service. In July 1998, based on this conviction, we suspended respondent from the practice of law for an interim period. *In re Madden* (1998), 82 Ohio St.3d 1464, 696 N.E.2d 222.

{¶ 3} The panel also found that after being appointed in April 1997 as executor of the estate of Dorothy M. Gebhardt, respondent wrote over $88,850 in checks to himself from the estate account. Respondent pled guilty to grand theft, and in December 1998 was sentenced to a year in prison.

{¶ 4} The panel further found that between August 1994 and September 1995, while administrator of the estate of Stephen J. Zajac, respondent wrote checks to himself, resulting in a loss to the estate of $131,000. The panel found that in September 1997, respondent converted to his own use $40,000 in settlement funds that he had received as counsel for claimants against the estate of Alice M. Rose. The panel also found that from June 1994 through November 1995, while guardian of Josephine Jackson, and then through September 1996, as administrator of her estate after her death, respondent caused losses of $15,100 to the guardianship and $6,227.50 to the estate.

{¶ 5} In December 1998, respondent pled guilty to five counts of grand theft relating to the Ieremie, Rose, Zajac, and Jackson estates, and the Jackson guardianship, and was sentenced to eighteen months of incarceration on each count with the sentences to run consecutively. The court then suspended the sentences and placed respondent on four years' probation upon completion of his sentence relating to the Gebhardt matter. Respondent was also ordered to pay restitution.

{¶ 6} Respondent reimbursed Mihalik $5,000, and paid $41,000 to the Zajac estate. The Zajac estate, the Jackson estate, the Jackson guardianship, and the Ieremie estate also received funds from respondent's bonding company. The Clients' Security Fund made payments to the Rose claimants and the Zajac estate.

Respondent has not reimbursed the bonding company, the Clients' Security Fund, or the Gebhardt estate.

{¶ 7} The panel concluded that respondent's conduct in appropriating funds from the sale of the Ieremie property and writing bad checks violated DR 1-102(A)(3) (engaging in conduct involving moral turpitude), 1-102(A)(4) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), 1-102(A)(5) (engaging in conduct prejudicial to the administration of justice), and 1-102(A)(6) (engaging in conduct which adversely reflects on the attorney's fitness to practice law).

{¶ 8} The panel further concluded that respondent, with respect to the Gebhardt estate, violated the same Disciplinary Rules, and finally concluded that his actions with respect to the Ieremie estate, the Zajac estate, the Jackson estate, the Jackson guardianship, and the Rose claimants constituted an additional violation of those rules.

{¶ 9} In mitigation, the panel received evidence of respondent's habitual depression. However, the panel also learned that at a meeting with court officials regarding the bad check indictment, respondent failed to disclose his continued administration of and defalcations in the Gebhardt estate. The panel recommended that respondent be permanently disbarred from the practice of law. The board adopted the findings, conclusions, and recommendation of the panel.

––––––––––––––––––

*Jonathan E. Coughlan*, Disciplinary Counsel, and *Lori J. Brown*, First Assistant Disciplinary Counsel, for relator.

*J. Michael Drain,* for respondent.

––––––––––––––––––

*Per Curiam*.

{¶ 10} We adopt the findings, conclusions, and recommendation of the board.  Respondent is hereby permanently disbarred from the practice of law in the state of Ohio.  Costs are taxed to respondent.

*Judgment accordingly*.

MOYER, C.J., DOUGLAS, RESNICK, F.E. SWEENEY, PFEIFER, COOK and LUNDBERG STRATTON, JJ., concur.

_____